UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES E. MARTS, JR., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | No. CV-07-0029-AMJ <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on August 27, 2007. (Ct. Rec. 13, 18). Attorney Jeffrey Schwab represents Plaintiff; Special Assistant United States Attorney Leis A. Wolf represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before any magistrate judge. (Ct. Rec. 17). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 18) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).

## **JURISDICTION**

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income on November 8, 2002, alleging onset beginning September 19, 1998. (Tr. 57-59, 87, 434-436.) The application was denied initially (Tr. 32-35) and on reconsideration. (Tr. 38-39. ) At the March 24, 2005, hearing, Administrative Law Judge ("ALJ")

Mary Bennett Reed heard testimony from the plaintiff and vocational expert Daniel McKinney. (Tr. 455-538.) On September 9, 2005, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 15-28). The Appeals Council denied a request for review. (Tr. 6-8). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on January 30, 2007. (Ct. Rec. 1, 4.)

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 47 years old on the date of the hearing and of the decision. (Tr. 457.) He stopped school in the tenth grade and therefore has a ninth grade education. (Tr. 75, 457.) Plaintiff has been employed as a construction worker, mechanical parts puller, Christmas tree farm worker, kitchen helper, sandwich maker, cashier, and tire repairer. (Tr. 70, 458-462, 512-513, 523.) He alleges disability since September 19, 1998, due to sleep apnea, asthma, high blood pressure, tendonitis in both arms, an inflamed ligament in the left knee, and allergies. (Tr. 69.)

At the administrative hearing held on September 24, 2005, plaintiff testified that he quit working in 1997 or 1998 after he developed tendonitis in his right elbow, a condition eventually requiring surgery. (Tr. 461-462.) Plaintiff has looked for work. (Tr. 464.) He drank alcohol until about 15 years before the hearing. (Tr. 465.) Plaintiff started using methamphetamine in 2000 and stopped about a year before the hearing. (Tr. 466-467.) He used it daily for a three and a half years. (Tr. 468.) At one time plaintiff smoked a quarter of an ounce of marijuana daily but found out about five years before the hearing that he breathes better without it. (Tr. 471.) He cannot work due to an inflamed tendon in his knee that "locks up," elbow problems, muscle spasms in his back, and depression. (Tr. 472-473.) Plaintiff experienced problems with his back most of his life, but has had no treatment or medication for it since 1998. (Tr. 475-476.) He takes medication for hypertension and controls diabetes with diet and medication. (Tr. 477-478.) Plaintiff has asthma and smokes. (Tr. 481-482.) He has obstructive sleep apnea but does not use a C-Path machine. (Tr. 483.) He has been depressed for two to two and a half years. (Tr. 485.)

Beginning about three years before the hearing, plaintiff has slept 16 to 18 hours a day. (Tr. 489.) Dr. Janssen recommended treatment with a psychologist but plaintiff forgot the appointment. (Tr. 491-492.) He does all of the grocery shopping, and, until about two years before the hearing, performed household chores without problems. (Tr. 497, 499.) On a good day plaintiff can walk two miles in 45 minutes, with stops to catch his breath; on a bad day, walking for five minutes is difficult. (Tr. 504-505.)

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or

equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction ("DAA") is not a contributing factor material to disability. *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423 (d) (2) (C) and 1382 (a) (3) (J); Sousa v. Callahan, 143 F. 3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404. 1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs.

*Bustamante v. Massanari*, 262 F. 3d 949 (9th Cir. 2001).

## **STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at the onset that the plaintiff meets the nondisability requirements set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2000. Plaintiff was therefore required to establish disability on or prior to this date. (Tr. 16.)  The ALJ found at step one that plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 16.) At step two, the ALJ found that plaintiff suffers from obesity, diabetes (after onset and after date last insured), right and left elbow tendonitis post surgery, mild chronic obstructive pulmonary disease, degenerative joint disease left knee (post date last insured), methamphetamine dependence, in remission since early 2004, and high blood pressure (post date last insured). (Tr. 20.) At step three the ALJ found that these impairments do not meet or medically equal one of the Listings impairments. (Tr. 20.)  The ALJ found that without substance abuse, Plaintiff has no severe mental impairment; when using methamphetamine (until 2002), plaintiff was limited to understanding, remembering and carrying out simple repetitive tasks with no more than superficial interaction with the public and co-workers. (Tr. 20-21, 24.)  The ALJ found Plaintiff not completely credible and assessed an RFC for a significant range of light work, both with and without substance abuse. (Tr. 21, 24-26.)  Relying on the testimony of a vocational expert, the ALJ found at step four that Plaintiff cannot perform the exertional requirements of his past relevant work. (Tr. 25.)  At step five, the ALJ relied on the VE's testimony that there are a significant number of light, unskilled jobs in the local and national economy which Plaintiff could perform. (Tr. 25-26.)   The ALJ found that substance abuse is not a contributing factor material to Plaintiff's disability. (Tr. 26.)   Accordingly, the ALJ determined at step five of the sequential evaluation process that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 26-27.)

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, he argues that the ALJ erred by failing to properly credit the opinions of plaintiff's treating physician, Thomas Dillon, M.D., and of examining psychiatrist, Julie Janssen, M.D.  (Ct. Rec. 14 at 8-17).

The Commissioner denies error and asks that the decision be affirmed. (Ct. Rec. 19 at 10.)

# DISCUSSION

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F. 2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv*., 44 F. 3d 1435, 1463 (9th Cir. 1995). In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful to the adjudication. *Andrews v. Shalala*, 53 F. 3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Physical Impairment

Plaintiff contends that the ALJ erred by failing to credit the opinion of Dr. Dillon, his treating physician. (Ct. Rec. 14 at 9-12). The Commissioner responds that the ALJ properly evaluated the medical evidence. (Ct. Rec. 19 at 6-10).

In September of 1998, plaintiff suffered an injury, lateral epicondylitis to his right elbow, while working as a carpenter's assistant. (Tr. 138, 147.) This injury forms the basis for plaintiff's onset date of September 19, 1998. (Tr. 57.) On June 18, 1999, plaintiff underwent right lateral epicondylar release and anconeus muscle flap repair. (Tr. 137.)

The ALJ notes that Dr. Dillon released plaintiff to work on several occasions. (Tr. 23,

referring to Exhibits 7F, 14F, and 17F.)  For example, in November of 2001, Dr. Dillon restricted plaintiff to sedentary work.  (Tr. 23 at n.6, citing Exhibit 14F/4.)  The ALJ observes that in January of 2002, Dr. Dillon opined that plaintiff's physical impairments were mild "yet inconsistently said he was limited to no more than sedentary work."  (Tr. 23 at n. 6, citing Exhibit 7F.)  Despite the restrictions, the ALJ notes that Dr. Dillon's examination notes reveal no abnormalities except "some wheezes related to bronchitis and no musculoskeletal exam was done."  (Tr. 23 at n. 6, referring to Exhibit 14F at 3-4.)  The ALJ observes that in subsequent visits, Dr. Dillon's "exams were cursory and set forth little in the way of objective findings or abnormalities."  (Tr. 23 at n. 6.)

When weighing the medical testimony the ALJ considered plaintiff's credibility, and found him less than completely credible. (Tr.  21.)  Credibility determinations bear on the evaluation of medical evidence when an ALJ is presented with conflicting medical opinions. *Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).  When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Matney v. Sullivan*, 981 F. 2d 1016, 1019 (9th Cir. 1992).  It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993). The ALJ may consider at least the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and her conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F. 3d 947,  958-959 (9th Cir. 2002), *citing Light v. Soc. Sec. Admin.,* 119

F. 3d 789, 792 (9th Cir. 1997).

The ALJ gave several reasons for finding plaintiff less than completely credible: (1) test results show over-reporting of symptoms and suggest malingering; (2) many of plaintiff's statements are inconsistent with the medical records, particularly with respect to substance abuse; (3) plaintiff's statements concerning his work history have been inconsistent; (4) plaintiff's lack of compliance with treatment recommendations, including failing to refill prescriptions for relatively long periods of time and not being entirely compliant with taking medications, negatively affects his credibility; (5) plaintiff has failed to stop smoking despite medical recommendations; and (6) objective testing, such as nerve conduction studies, have failed to substantiate plaintiff's subjective complaints. (Tr. 21-22.)

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor. *Bunnell v. Sullivan*, 347 F. 2d 341, 345 (9th Cir. 1991). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989). As noted, inconsistencies between statements and conduct cast doubt on credibility. *See e.g., Thomas*, 278 F. 3d at 958-959. In the undersigned's opinion, even if evidence of malingering is discounted, the ALJ's reasons for finding plaintiff less than fully credible are clear and convincing.

The ALJ points out that Dr. Dillon's opinion is contradicted, specifically by the results of a four hour physical capacities evaluation conducted on October 28, 1999, where plaintiff lifted up to 230 pounds and was assessed as physically capable of medium to heavy work. (Tr. 23 at n. 6, referring to Exhibit 6F; Tr. 172-175.) The ALJ considered notes in July of 2003 (a month after plaintiff's medial epicondylotomy), that show good healing, sensation and range of motion. Plaintiff was advised to increase activities but not do "heavy lifting." (Tr. 23 at n. 6, referring to Exhibit 13F/15.) The ALJ considered Dr. Dillon's March of 2005 opinion which limited plaintiff to sedentary work and assessed postural limitations and limitations in use of the hands. (Tr. 23, referring to Exhibit 22F.) The ALJ stated:

> In reviewing Dr. Dillon's chart notes, for the most part there is little in the way of examinations or findings, which affects the weight to be accorded to his opinion. Also, this (March of 2005 assessment) was based on "new carpal tunnel symptoms" (first mentioned in March 2005), which has not been objectively verified through recent nerve conduction tests (which were negative in the past), as well as being a more recent complaint (and based on subjective responses and the claimant is not credible). Therefore the record does not show that this impairment (or any resulting limitations), will meet the 12-month durational requirements of the Act. Dr. Dillon also mentioned knee surgery, back pain, and arthritis. However, the claimant did not follow up in 2001 with earlier knee complaints aggravated by squatting (Exhibit 19F/10-12), chart notes do not indicate that this has been an ongoing complaint, and the record does not show that any surgery is contemplated. The first thorough evaluation of the claimant's back by Dr. Dillon was in March of 2005, at which time straight leg raising was negative, there was reduced range of motion and muscle spasm. Exhibit 22F/4. Yet range of motion is within the control of the patient. Exhibit 19F reflects no complaints regarding the claimant's back nor are back complaints relayed to Dr. Dillon in Exhibits 14F, 17F, and 18F. It is further noted that claimant's activities of daily living would indicate he is able to engage in postural activities. Accordingly, the claimant's purported back complaints have not been shown to meet the durational requirements of the Act. Therefore, the undersigned rejects the assessment of Dr. Dillon to the extent that it is inconsistent with the findings of the undersigned.

(Tr. 23.)

The ALJ concluded that there was no basis for Dr. Dillon's opinion that plaintiff is limited to sedentary work. (Tr. 23 at n. 6.)

The ALJ gave several reasons for rejecting Dr. Dillon's opinion that plaintiff was limited to sedentary work : 1) the opinion was based in part on plaintiff's less than credible subjective reports; 2) the opinion is unsupported by Dr. Dillon's physical exam results; 3) the opinion is internally inconsistent, and 4) it is contradicted by the results of a physical capacities exam and by exam results in June of 2003. (Tr. 23.)

The ALJ's reasons are specific and legitimate and supported by substantial evidence. The ALJ properly weighed Dr. Dillon's opinion.

Mental Impairment

On February 22, 2002, psychiatrist Julie Janssen, M.D., examined plaintiff for depression and excessive sleepiness. (Tr. 245.) Dr. Janssen based her opinion on "an interview with the patient, as well as a brief review of his clinical records." (Tr. 245.) She apparently administered two tests: spelling the word "world" backward, and an abstract reasoning test based on similarities. Plaintiff was able to spell "world" backward. Dr. Janssen describes plaintiff's results of the

abstract reasoning based on similarities test as both "above average" and "average." (Tr. 247.) Plaintiff felt his excessive sleepiness was due to methamphetamine abstinence. (Tr. 245.) He quit taking it 15 years before the evaluation; relapsed a year and a half earlier, and last used methamphetamine 4 to 5 days before the evaluation after three months of abstinence. Plaintiff last used alcohol on December 31, 2001. (Tr. 245-246.) Dr. Janssen opined that it was difficult to determine if plaintiff "truly has fatigue or lack of motivation, or a combination; it sounds as though he may also sleep and stay in his bedroom to avoid environmental stressors." (Tr. 245.) Plaintiff described excessive irritability, tearfulness, deterioration of concentration and memory, and excessive worries over finances. (Tr. 245.) During the past two years plaintiff had more bad days than good. (Tr. 245.) He has not undergone counseling or psychiatric hospitalization. (Tr. 246.) Recently plaintiff quit taking wellbutrin because it was ineffective. In the past prozac was similarly ineffective. (Tr. 246.) Plaintiff suffers from asthma, tendonitis, hypertension and hypercholesterolemia. (Tr. 246.)

Dr. Janssen observed that plaintiff appeared to be in moderate psychological distress, was alert, and had good concentration. (Tr. 246.) She noted that, subjectively, he was unable to describe his mood; objectively, he appeared withdrawn and dysphoric. (Tr. 247.) Dr. Janssen assessed dysthymic disorder, early onset; anxiety disorder not otherwise specified (incomplete criteria for posttraumatic stress disorder); polysubstance dependence in early partial remission; rule out amphetamine induced sleep disorder, with onset during withdrawal. (Tr. 247.) Dr. Janssen assessed a GAF of 45.[1] (Tr. 247.) She recommended an evaluation for sleep apnea, referral for further counseling to help plaintiff deal with current environmental stressors, trial of aricept for poor concentration and memory, trial of provogil (apparently for sleep problems), and working on a routine sleep schedule. (Tr. 248.)

With respect to this opinion, the ALJ noted that plaintiff admitted he used methamphetamine shortly (4 to 5 days) before the evaluation, which would have affected his

---

[1] Global Assessment of Functioning Scale (GAF) of 45 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 32.

- 11 -

presentation to Dr. Janssen. (Tr. 24.)   The ALJ also observed:

> Her observations of the claimant also noted that he was alert, cooperative, with normal speech, no difficulties with judgment were noted, and he had normal thought processes.  The only significant observed abnormality was that he appeared withdrawn and she was concerned about his poor judgment in [the] past.  She did no objective testing and in light of her report noting little in the way of observed difficulties/abnormalities, based her conclusion on his subjective complaints, and he is not credible.  Therefore, her assessment is accepted only to the extent it shows the impact of the claimant's substance abuse.

Tr. 24.

As noted, the ALJ is incorrect that Dr. Janssen performed no objective testing; she apparently conducted two tests. (Tr. 246-247.) In February of 2005, Dr. Dillon referred plaintiff to Dr. Janssen for a second pharmacotherapy consultation due to his complaints of excessive daytime sleepiness. (Tr. 406.) Dr. Janssen obtained her information directly from the plaintiff. (Tr. 406.) She opined that diabetes and sleep apnea most likely account for plaintiff's complaints but that developing hobbies and interests would be beneficial as well. (Tr. 407.) The ALJ notes Dr. Janssen's opinion that plaintiff's lack of activities and social interaction contribute to his boredom and low energy level. (Tr. 19, referring to Exhibit 20F.) Dr. Janssen assessed a mood disorder due to medical condition (sleep apnea, diabetes), depressive type; dysthymic disorder, early onset; and polysubstance dependence in full remission. She recommended adjusting plaintiff's psychotropic medication including adding a trial of lexapro, an antidepressant. (Tr. 407.)

Jay Toews, Ed. D., evaluated plaintiff on June 4, 2005. (Tr. 420.) Dr. Toews reviewed records and administered testing, in addition to interviewing plaintiff. Plaintiff reported "upper extremity weakness, left knee problems, fatigue causing somnolence, bilateral epicondylitis, and depression," as well as a history of substance abuse. (Tr. 420.) Plaintiff "has been released to work, has tried to find employment, but the job market is poor." (Tr. 420.) Standing causes sharp pain. He has fatigue and sleeps 14-16 hours a day. Plaintiff takes strattera to boost energy and stay awake. (Tr. 420.)

Plaintiff described a 15-20 year history of marijuana abuse. (Tr. 4231.) He abused methamphetamine for 3-4 years, quit using drugs 12-18 months before Dr. Toews's assessment, and had a couple of relapses. Plaintiff did not undergo an organized treatment program. He believes he developed depression as a result of drug use. (Tr. 421.) When reviewing plaintiff's records, Dr.

Toews noted the performance-based physical capacities evaluation in October of 1999 indicating plaintiff had worked himself up to medium/heavy physical demand levels for 4 hours and building up to an 8 hour day. (Tr. 412.) Pulmonary function studies in 2002 demonstrated no restrictive lung disease. Depression, treated by prozac, is mentioned by doctors in June of 2003. The drug helped with plaintiff's tiredness and lack of energy but not much with depression. Hypertension was under borderline control. Plaintiff was found to have obstructed sleep apnea with hypoxemia and to have developed a chronic pain syndrome/chronic bilateral elbow tendonitis. He reviewed Dr. Janssen's first evaluation. (Tr. 421.) Diabetes was diagnosed and treated fairly well with medication in 2003-2004. (Tr. 421-422.) Dr. Toews observes that in July of 2004, Dr. Dillon was treating plaintiff with lithium and effexor. Dr. Dillon "contemplated a second referral to the psychiatrist, but the patient was disinterested." (Tr. 422.) Adding lithium was apparently beneficial. (Tr. 422.)

Plaintiff told Dr. Toews he had been depressed for 4-5 years. He felt his depression was not responsive to psychotropic medication (Tr. 422.) Plaintiff was not being treated by a mental health professional but Dr. Dillon managed his antidepressant medication. (Tr. 422.) Plaintiff's activities include taking out the trash, laundry, shopping, driving, watching television, and playing cards or table games. (Tr. 422.) Testing revealed attention, concentration and memory are within normal limits, as is IQ. (Tr. 423-424.) Testing revealed no specific learning disability. (Tr. 425.) Plaintiff's responses on the MMPI-2 raised questions about the validity of the clinical profile. Dr. Toews points out that the "validity configuration is consistent with an individual who is dramatically over-endorsing psychopathology" and "the profile is most consistent with the probability of malingering." (Tr. 425.) Dr. Toews continued: "The clinical profile cannot be readily interpreted. Elements of the profile are suggestive of significant substance abuse." (Tr. 425.) Dr. Toews opined that scores would predict good success with vocational rehabilitation. (Tr. 426.) He opined that there are no psychological barriers to plaintiff's employability. (Tr. 426.)

The ALJ accorded Dr. Toews's assessment great weight because he reviewed extensive medical records, and administered personality and intellectual testing. (Tr. 24.) The ALJ notes that in Dr. Jenssen's 2005 assessment, she did not assess a GAF and "urged the claimant to develop

day-time activities to keep busy." (Tr. 24.)

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

Contrary to plaintiff's arguments, the ALJ properly considered the opinions of examining psychologist Dr. Janssen and gave a number of specific and legitimate reasons supported by medical evidence in the record for discounting some of those opinions, including Dr. Janssen's reliance on plaintiff's unreliable subjective complaints, failure to administer objective testing (other than the two tests as noted), and lack of significant medical record review. Since the ALJ's finding regarding plaintiff's limitations is consistent with the credible medical evidence of record, the undersigned finds that plaintiff's argument to the contrary is without merit. The ALJ properly weighed Dr. Janssen's opinions.

The ALJ's determination that plaintiff retains the RFC to perform a wide range of light work is consistent with and is supported by the detailed medical findings and opinions in the record.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, the court finds that the ALJ's decision that plaintiff is able to perform a wide range of unskilled light work is supported by substantial evidence and free of legal error. Therefore, plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 10**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 12**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

1  IT IS SO ORDERED.

2  **DATED** this 14th day of November, 2007.

3

4                                                               s/Larry M. Boyle
                                                            LARRY M. BOYLE
5                                                  UNITED STATES MAGISTRATE JUDGE